**IN THE UNITED STATES DISTRICT COURT FOR THE WESTERN DISTRICT OF OKLAHOMA**

| | | |
|---|---|---|
| EQUAL EMPLOYMENT OPPORTUNITY COMMISSION, | ) | |
| Plaintiff, | ) | NO. CIV-05-1058-HE |
| HEALTH FOODS ASSOCIATES INC., d/b/a Akin's Natural Foods Market, | ) | |
| Defendant. | ) | |

**ORDER**

Plaintiff Equal Employment Opportunity Commission ("EEOC") filed this action on behalf of Cynthia Barnett against defendant Health Foods Associates Inc., d/b/a Akin's Natural Foods Market ("Akin's"), claiming Akin's discriminated against Ms. Barnett in violation of the Americans with Disabilities Act ("ADA), 42 U.S.C. §§ 12101-12213. Plaintiff asserts Akin's improperly failed to hire her for the position of stocker due to her disability and failed to reasonably accommodate her. Akin's has filed a motion for summary judgment, claiming it did not violate the Act because Ms. Barnett was incapable of performing the essential functions of the job, even with the proposed accommodation of a job coach.

Summary judgment is appropriate only when "there is no genuine issue as to any material fact and ... the moving party is entitled to a judgment as a matter of law." Fed.R.Civ.P. 56(c). The evidence and any reasonable inferences that might be drawn from it are viewed in the light most favorable to the nonmoving party. Davidson v. America

Online, Inc., 337 F.3d 1179, 1182 (10th Cir 2003). Having applied the Rule 56 standard to determine "whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law," Jeffries v. Kansas, 147 F.3d 1220, 1228 (10th Cir.1998) (internal quotation and citation omitted), the court concludes the defendant's motion should be granted.[1]

Background

The defendant operates retail health food stores in several states, including one located in the Mayfair Shopping Center in Oklahoma City. Akin's competes with other grocery stores, whose prices generally are lower, by focusing on customer service. Employees are trained that the customer comes first. Cashiers are instructed to call for backup if a customer will have to wait more than thirty seconds to be checked out or if there are more than two people in the line. Employees are cross-trained to run the cash register and are expected to help when needed by sacking and carrying out groceries. The first of the "Stocking Commandments" instructs stockers to stop, no matter what they are doing, and help a customer who needs assistance.[2]

[1] *The court has not considered the report of Akin's expert witness, Morey Villareal, challenged by the plaintiff in a separate motion, because it finds the expert's opinions to be of minimal, if any, assistance on the issues to be decided. While Villareal is amply qualified to express opinions in the field of employee recruitment and selection, the issues on which he opines can be analyzed without expert assistance. The report of the experts retained by the plaintiff, Dr. Adams and John Linck, defendant's Exhibit 8, offered by the defendant, has been reviewed and supports the court's conclusions.*

[2] *"No matter what thou are doing, thou shalt always stop to cheerfully help customers if they need help. Thou shalt provide superior customer service at all times regardless of*

In August, 2003, and the following February, 2004, Ms. Barnett, who has a mental disability as a result of Down Syndrome, stopped at the defendant's Mayfair store with a job coach.[3] They inquired about employment for Ms. Barnes as a stocker and she submitted an application. Both times they met briefly with Joseph Garbacz, the store manager. During the initial visit in August, the job coach introduced herself and Ms. Barnett, described Ms. Barnett's qualifications and explained the role of a job coach. Garbacz spent approximately a minute reviewing Ms. Barnett's job application and asked her about her former employment. Ms. Barnett did not respond to his question and Garbacz would not allow the job coach to assist her in answering. He did not ask Ms. Barnett anything else and the coach and Ms. Barnett left without scheduling a more formal interview.[4]

Ms. Barnett returned to the store with a different coach in February and applied again for a job. The coach was not aware that Ms. Barnett had been to Akin's previously. When the coach tried to tell Garbacz about Ms. Barnett's organizational skills, the plaintiff claims

*other duties." Akin's and Chamberlin's Stocking Commandments, plaintiff's Exhibit 3.*

[3]*Several agencies, schools or programs, including Bridges to Work, provided Ms. Barnett with vocational services, including job skills assessments and job training or coaching. Job coaches would take Ms. Barnett on interviews. With respect to her later employment by Albertson's, her coach took her to and from work.*

[4]*Another job coach, John Blalock, called Garbacz after the interview. The plaintiff claims Garbacz told him that there was "no way" that Ms. Barnett would work out in the store, that she could not even tell him what her last job was. He allegedly stated that Akin's employees shifted from department to department and that would require retraining Ms Barnett every time she moved, which would not work. When Blalock explained the role job coaches played and that they could train Ms. Barnett at no cost to Akin's, the EEOC contends Garbacz said he was sorry but that would be a waste of time.*

he informed the coach that Ms. Barnett had been in before with another counselor and he had told her he could not use someone like Ms. Barnett. He allegedly said Ms. Barnett would not fit in, that people in the store might make fun of her and that Akin's would not work out for her because she would not be able to flourish.[5] They left and Ms. Barnett subsequently was hired by Albertson's.

At Albertson's Ms. Barnett worked part-time in the bakery placing frozen cookie and bread dough on pans to be baked later. Her job included reading a list of the types of products, e.g. French bread, and numbers of each type of product she was to prepare that day and then obtaining those products from the freezer.[6] She would place the appropriate number of loaves, rolls or cookies on each pan, cover them and put them in a cooler. Occasionally she would package the baked rolls. That required her to identify the type of product and the correct bag and label, place the correct number of rolls in each bag, and then put the bag in a machine that sealed it. She did not answer customer's questions, but was trained to tell them someone would be there right away and then find another employee to help.

As part of the vocational services she received before she applied at Akin's, Ms.

---

[5]*Although Akin's denies that Garbacz made the remarks the EEOC attributes to him, the court has accepted as true, for purposes of resolving the defendant's motion, the plaintiff's evidence as to the conversations Garbacz had with Ms. Barnett and the different job coaches.*

[6]*As the boxes were identical, Ms. Barnett had to read the labels to select the breads or cookies she was to prepare. She apparently worked with French bread, both white and wheat, Italian bread, and four types of cookies. Plaintiff's Exhibit 16, Bratcher depo., pp. 29-32.*

Barnett worked as a volunteer at the YMCA washing towels and cleaning locker rooms, provided custodial services at a nursing home and sacked groceries at the Mid Del Food Bank. She also had paid employment at a used clothing store hanging and straightening clothes and picking up and reshelving shoes.

Ms. Barnett filed a charge with the EEOC after her second visit to Akin's. On September 12, 2005, the agency filed this public enforcement action.

Discussion

The ADA encompasses three distinct types of discrimination: disparate treatment, failing to provide reasonable accommodation and disparate impact. Davidson, 337 F.3d at 1188-89. The EEOC claims Akin's violated the ADA by failing to hire Ms. Barrett and by failing to reasonably accommodate her. It is questionable whether the plaintiff has alleged two distinct claims. The EEOC essentially argues that Akin's discriminated against Ms. Barnett by failing to hire her because she would have been capable of performing the essential functions of the stocker's job if the company had reasonably accommodated her by allowing a job coach to assist her.[7] However, "[n]o matter what type of discrimination is

[7]*The EEOC does briefly assert that Garbacz failed to reasonably accommodate Barnett when he would not allow the job coach to assist in answering his question, citing 29 C.F.R. § 1630.2(o)(1)(i). Plaintiff's response, p.8. That regulation provides that the term reasonable accommodation means: "Modifications or adjustments to a job application process that enable a qualified applicant with a disability to be considered for the position such qualified applicant desires." The plaintiff still must establish that Ms. Barnett was a "qualified applicant," which the court has concluded has not been done. The EEOC also argues that Akin's "never provided Ms. Barnett an accommodation during the interview process to make a valid determination about her skills at that time," plaintiff's response, p. 12, and refers to* the statement of the defendant's corporate representation that it was Akin's

alleged, ... a plaintiff must establish first that [s]he was 'a qualified individual with a disability.'" *Id*. at 1189. Akin's defense is that Ms. Barnett was not qualified for the position of stocker, with or without reasonable accommodation.[8]

A two-part test is used to determine whether an individual is qualified within the meaning of the ADA:

> First, the court determines whether the individual can perform the essential functions of the job. Second, if (but only if) the court concludes that the individual is unable to perform the essential functions of the job, the court determines whether any reasonable accommodation by the employer would enable him to perform those functions.

*Id.* at 1190 (internal citation omitted). The EEOC bears the burden of showing that Ms. Barnett is able to perform the essential functions of the job. Mason v. Avaya Communications, Inc., 357 F.3d 1114, 1119 (10th Cir. 2004). "Essential functions" are "the fundamental job duties of the employment position the individual with a disability holds or desires." 29 C.F.R. §1630.2(n)(1). Determining whether a function is essential is a factual inquiry. Bartee v. Michelin North America, Inc., 374 F.3d 906, 915 (10th Cir. 2004;

---

position that it could not determine whether Ms. Barnett could perform the essential functions of the job. Assuming this allegation states a failure to accommodate claim, it, too, fails because the plaintiff has not produced evidence that Ms. Barnett could have demonstrated that she was a "qualified individual" under the ADA. See generally Mason v. Avaya Communications, Inc., 357 F.3d 1114, 1124 n.4 (10th Cir. 2004) (employer not required to engage in the interactive process to discover alternative accommodations because plaintiff was not a qualified individual with a disability under the ADA).

[8]*Analysis under the McDonnell Douglas burden-shifting framework is unnecessary in this case, as it is undisputed that Ms. Barnett is disabled and Akin's has at least tacitly admitted that Ms. Barnett's disability "played a prominent part in the decision." See Davidson, 337 F.3d at 1189.*

Davidson, 337 F.3d at 1191. [9]

Akin's has identified at least four essential job functions of a stocker: operating a cash register, stocking shelves, sacking and carrying out groceries, and assisting customers. The plaintiff admits that Ms. Barnett does not have the cognitive skills to operate a cash register, but disputes that it is one of the job's essential functions. The court does not, however, have to resolve that issue, as it finds the EEOC has not met its burden of showing the existence of a factual issue as to two other job functions which the plaintiff admits are essential – stocking shelves and assisting customers.[10] Plaintiff's response, p. 2, Fact No. 15 pp. 5-6, Fact No.10.

Stocking shelves at Akin's involves more than merely placing products on shelves. Stockers have to read UPC or bar codes to sort and stock products by their UPC number. Products with the same label but different properties, such as sodium or wheat free, must be stocked together. Stockers also have to check date codes so newer products are put at the

---

[9] *"Evidence considered in determining whether a particular function is essential includes: (1) the employer's judgment as to which functions are essential; (2) written job descriptions prepared before advertising or interviewing applicants for the job; (3) the amount of time spent on the job performing the function; (4) the consequences of not requiring the incumbent to perform the function; and (5) the work experience of past incumbents in the job."* Mason, *357 F.3d at 1119 (citing 29 C.F.R. § 1630.2(n)(3)).*

[10] *The defendant also challenges Ms. Barnett's ability to sack groceries. This is another close question, as the plaintiff's average scores for work habits and work quality on the situational assessment the EEOC relies on to show she can perform that task, were below "adequate," falling between "occasionally an area needing improvement" and "adequate." Plaintiff's Exhibit 24. The court also notes that the assessment of Ms. Barnett's ability to work as a grocery sacker may have been based on just a half day or day spent at a food bank. See defendant's Exhibit 3, Dienz depo., p. 56 .*

back of the shelves and the store can be advised when a product has expired.

In response to the defendant's listing of the various tasks performed in conjunction with product placement, the plaintiff denies "Ms. Barnett was incapable of performing many of the duties independently and/or with a reasonable accommodation of the assistance of a job coach." Plaintiff's response, p. 2.[11] The EEOC fails, though, to produce evidence showing how Ms. Barnett could sort the products, check expiration dates, etc. She did not perform similar functions in any of her other jobs, and the EEOC's claim that Ms. Barnett's experience using a UPC scanner in the self check out line at the grocery store demonstrates her ability to read bar codes is not persuasive. Finding and swiping a bar code is not the same function as sorting products by reading the UPC code. Reading labels on a limited number of frozen dough boxes also cannot be equated with reading the descriptions or ingredients of many different products and sorting them on that basis.

As the EEOC has not produced evidence demonstrating that Ms. Barnett could stock shelves unassisted, the issue becomes whether she could perform that job function with any reasonable accommodation. The only accommodation suggested by the plaintiff is a job coach who could train Ms. Barnett.[12] The EEOC relies on the testimony of Mr. Blalock, an

---

[11]*The court notes that the EEOC qualified its response – asserting only that Ms. Barnett could perform* <u>*many*</u> *of the duties of the job with or without reasonable accommodation.*

[12]*Although the coach's role, other than training Ms. Barnett, was not discussed, the court assumes the EEOC was contemplating a coach similar to the one who assisted Ms.* Barnett at Albertson's.

experienced job coach, to show that Ms. Barnett could learn to stock shelves.[13]

The court does not question that Blalock could have taught Ms. Barnett some of the basic skills required to be a stocker at Akin's, such as placing the merchandise so that it came to the edge of the shelf or notifying someone when a shelf was empty.[14] He did not, however, testify that he could train her to sort products by bar codes or ingredients. He stated he thought a person with Down Syndrome could operate a UPC scanner, but admitted that he had never taught a person with that disability to use one.[15] Blalock did testify that he had trained five individuals to be stockers in retail stores. However, he did not specify the duties of those jobs, other than to say that one involved training an individual to stock candy at Target by the cash registers. His testimony is insufficient to demonstrate a triable issue of fact as to Ms. Barnett's ability to perform all the different tasks involved with stocking shelves at Akin's even with the accommodation of a job coach.

The EEOC also failed to show a question exists as to Ms. Barnett's ability, with or

---

[13]*The defendant admitted that a temporary job coach, who would work with Ms. Barnett to learn the essential functions of stocker, was a reasonable accommodation. Plaintiff's Exhibit 6, Parette depo., p. 55.*

[14]*Blalock said he could teach Barnett to notify someone when a shelf was empty "because that's a visual thing." Plaintiff's Exhibit 9, Blalock depo. p. 147. He then testified that "if [Ms. Barnett] were to have to go scan that with a UPC code machine and let that machine tell her that the product is out or they need to reorder, that's something she never got the opportunity to do so I can't say that." Id.*

[15]*Blalock testified that he was able to train two individuals with Down Syndrome and IQ's of around 70 to determine if products were out of date by the year, but not the month. Plaintiff's Exhibit 9, Blalock depo. pp. 18-19. Ms. Barnett's IQ was 54. Defendant's Exhibit 8, Plaintiff's Expert Report.*

without reasonable accommodation, to assist and interact with customers, another essential function of the position.[16] Stockers are expected to fill out special order forms for customers, help them find products, provide basic product information and answer questions such as what is the correct price when a sticker says one price and a sale sign says another.[17] The plaintiff states that Ms. Barnett can "interact[] with customers in her own way and can direct a customer to a manager." Plaintiff's response, p. 6. However, the question is whether she could perform the essential functions of this position, which included responding to customer inquiries of various types and in various contexts. Referring such inquiries to others does not meet that standard. Similarly, reliance on an accommodation that would effectively require another employee to work alongside Ms. Barnett all the time goes beyond what the law requires. *See* Anderson v. Coors Brewing Co., 181 F.3d 1171, 1177 (10th Cir. 1999) (Accommodation that would require employer "to change the structure of its business or create a new position for Plaintiff" or "make its other TPOs perform all of the operation's demanding tasks while Plaintiff performs only certain light tasks" was unreasonable).

---

[16]*The EEOC "disputes 'perfect' communication is an essential function" of the job, citing Akin's hiring of another employee as a stocker who used a job coach and who, the EEOC asserts, "could hardly speak English." Plaintiff's response. p. 6. However, the EEOC mischaracterizes the deposition testimony it relies on and ignores other statements by the deponent. Shannon Caldwell did not state that the employee could hardly speak English. She testified that the employee "didn't speak real good English," and did not have "a lot of English difficulty, she just had a heavy accent." She also denied that the employee's job coach acted as a translator. Plaintiff's Exhibit 5,Caldwell depo. pp. 33-39.*

[17]*Akin's did not expect its stockers to be able to answer more complicated questions, such as an inquiry regarding a product's nutritional value. Plaintiff's Exhibit 6,Parette depo. pp. 58-59.*

The plaintiff also did not offer evidence demonstrating that Ms. Barnett could fill out special order forms. The EEOC asserts that a job coach could assist Barnett with the forms, but Blalock did not testify that he could teach her how to fill out forms. His testimony, rather, was he would not say she could not do that because she had never been given the opportunity while working in the Bridges to Work office. Plaintiff's Exhibit 9, Blalock depo. p. 114-15.

As there is nothing in the record sufficient to support a finding that the plaintiff could be sufficiently trained to respond to customer's inquiries by herself[18] or to refute the defendant's evidence that referring all questions was an unreasonable accommodation, the plaintiff has not shown a question exists as to whether Ms. Barnett could fulfill the customer assistance function of the stocker job.[19] This, combined with the lack of evidence that Ms. Barnett could stock shelves, defeats the EEOC's claim under the ADA. *See generally* Mason, 357 F.3d at 1123 ("[T]he ADA does not even require an employer to modify an essential function of an existing position in order to accommodate a disabled employee.").

Viewed in the light most favorable to the plaintiff, the evidence suggests the conduct

---

[18]*Evidence that Blalock taught Ms. Barnett to make eye contact and answer questions, does not show that she was capable of answering the questions she would be asked when working as a stocker at Akin's.*

[19]*Although there was evidence that Ms. Barnett was a sociable individual, her mother testified that her response to a customer could depend on how the person approached her. She responded, when asked "about the interaction process itself of having someone she doesn't know com[e] up to her out of the blue and ask[] her a question," that "[i]t could be a problem." Defendant's Exhibit 3, Dienz depo. p. 49.*

of the defendant's manager when he met with the plaintiff left much to be desired. However, the ADA does not proscribe rudeness or allow recovery in circumstances such as these where the job applicant could not perform the essential functions of the position she sought.[20] *See generally* Mason, 357 F.3d at 1119 ("In short, the essential function 'inquiry is not intended to second guess the employer or to require the employer to lower company standards.'" ) (quoting Tate v. Farmland Indus., Inc., 268 F.3d 989, 993 (10th Cir. 2001)). Accordingly, having concluded the plaintiff has failed to submit evidence sufficient to demonstrate a fact question exists as to whether Ms. Barnett was a "qualified individual with a disability," the defendant's motion for summary judgment [Doc. #39] is **GRANTED**. The plaintiff's motions to exclude defendant's expert witness [Doc. # 32] and for partial summary judgment [Doc. # 38] are **DENIED** as being moot.

**IT IS SO ORDERED**

Dated this 4th day of October, 2006.

JOE HEATON
UNITED STATES DISTRICT JUDGE

---

[20] *Contrary to the plaintiff's assertion, the defendant's manager did* not *tell Akin's expert that Ms. Barnett was not fit to sweep floors. Plaintiff's response, p. 18. The plaintiff cites pages 151-52 of Villareal's deposition testimony, plaintiff's Exhibit 12, to support this mischaracterization of Garbacz's discussion with Villareal. What Villareal essentially stated was that Garbacz told him that every job in the store, including "even a job that might involve some custodial duties like sweeping the floor or mopping the floor," required the ability to communicate. Villareal depo. pp. 150-52.*